*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ASANTE LEE WRIGHT,

        Defendant-Appellant.

UNPUBLISHED
July 14, 2026
11:58 AM

No. 373711
Washtenaw Circuit Court
LC No. 23-000123-FC

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

Defendant, Asante Wright, appeals as of right his bench trial convictions of second-degree murder, MCL 750.317, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

On November 30, 2022, Wright killed his fiancée, Patricia Fowler, by shooting her in the head while they were in her vehicle. He covered her body with a blanket and drove to the home of his friend, Bashid Bristol-Davis. With Bristol-Davis's help, he moved Fowler's corpse into the trunk of Fowler's vehicle, which they then parked a street away from Bristol-Davis's house. Within hours of her death, Wright told a friend that she was dead, but that he did not have time to be sad because he had to deal with a problem. He also reached out to a former girlfriend via text message and started a somewhat flirtatious conversation. When Fowler's family contacted him because Fowler was missing, he denied knowing where she was and suggested that she was with "some other dude."

Approximately two days after Fowler's death, Wright enlisted the aid of Corey Duncan to dispose of her corpse and vehicle. Duncan and Wright destroyed Fowler's cellular phone. At Wright's direction, Bristol-Davis disposed of Wright's gun. Then, after procuring gasoline, the three men drove three separate vehicles to a parking lot in Detroit. When they arrived, they mixed the gasoline with dish soap. They then doused Fowler's body and vehicle in gasoline and set it alight. When Fowler's body was discovered, it had been badly damaged by the fire and had to be

-1-

identified using DNA. The medical examiner determined that the cause of death was a single gunshot to the head.

Duncan was apprehended by the police in relation to a separate incident. While in custody, he confessed to aiding Wright in mutilating Fowler's body and burning her vehicle. He claimed that he had been coerced into aiding Wright, who had stated, "[I]f I kill my girl, I'll kill you."[1] Duncan stated that Wright had told him that he was angry that Fowler had been texting another man, so he shot her. Following Duncan's interview, Wright was arrested. He initially denied knowing Duncan and denied any involvement in Fowler's death.

Sometime later, Bristol-Davis was arrested in another state and was extradited back to Michigan. During police questioning, Bristol-Davis turned over two letters he had received from Wright discussing Fowler's death, the charges against him, and possible sentences that they could receive depending upon what was told to the police. Bristol-Wright confessed to helping Wright move Fowler's body to the trunk and then burning her vehicle and body a few days later.[2] According to Bristol-Davis, Wright told him that Fowler had been "accidentally shot" when "somebody came by that was unwanted." Wright told Bristol-Davis that "he defended and protected his self and [Fowler] didn't move quick enough and she accidentally got hit." Bristol-Davis told the police that Wright said his "enemies" had been driving a black jeep. He added that Wright did not tell him that he had been fired upon; he only stated that he had shot at another vehicle "[o]ut of fear for his life."

While in custody, Wright was interviewed multiple times. During his first interview, he denied all involvement. However, during a second interview, he admitted that on the night Fowler died, he had been driving her vehicle. He said that he was intoxicated when he picked her up from her father's house and drove to his mother's house. They "hung out" in the vehicle, eventually falling asleep. When he woke up, another argument with Fowler ensued because she had drunk some of his water. They drove to a nearby gas station, and Wright went inside. He was armed with a gun at that time. When he returned to the vehicle, he got into an argument with Fowler. He claimed this argument was because he was intoxicated, had insisted that they stay in the car instead of going inside his mother's house, and had "slipped up" and told her that he had "some conflict" with "some people."

Wright told the police that the people he was in conflict with were in a black pickup truck and he saw a similar-looking truck driving the wrong way down the street. He said he "paused for about 15 seconds" and when he was right beside the vehicle, Fowler "made a kind of a gasp and leaned forward." Wright claimed that he "immediately thought that it was a gunshot." He took his gun from his lap and started shooting. He claimed that the people in the other vehicle returned fire and that they might have been the ones to kill Fowler. But he admitted that he was "just kind of shooting and not aiming" and that Fowler had been "in his line of fire."

---

[1] Duncan testified pursuant to a plea agreement with the prosecution.

[2] Bristol-Davis also testified pursuant to a plea agreement with the prosecution.

During that interview, Wright denied moving Fowler's body to the trunk, denied conspiring with Duncan to burn Fowler's body and vehicle, denied destroying Fowler's phone with Duncan's assistance, denied participating in the destruction of Fowler's body and vehicle, and denied writing the notes to Bashid-Davis. However, in a subsequent interview, he claimed that the occupants of the other vehicle had shot first. He then admitted that he had moved Fowler's body to the trunk of her vehicle with Bristol-Davis, had discussed with Duncan different methods to dispose of Fowler's body, and was involved in procuring a gas can and traveling to Detroit to burn Fowler's body. He confessed also to removing his blood-stained clothing and putting them in the vehicle before it was set on fire. Once the fire was started, he fled the area with Bristol-Davis and Duncan.

Finally, during another interview, Wright explained that he had been "shooting recklessly" and that Fowler was in his line of fire. At that time, he vacillated between saying that he shot at the other vehicle first and saying that the occupant of that vehicle shot at him first. He thought that, based upon the way Fowler's body moved after being shot, that he was the one that shot her. Finally, he suggested that he had been in a shootout with a "similar" vehicle during a prior incident.

At trial, the prosecution's theory was that Wright murdered Fowler because he thought she was cheating on him with another man. The prosecution argued that Wright had the intent to kill when he pulled out and shot his gun in Fowler's direction and that it did not matter if he was shooting at Fowler or at someone in another vehicle. The prosecution noted that there was no evidence to corroborate Wright's "shootout" theory, which had been stated for the first time more than a year after Fowler's death. The defense theory was that Fowler was shot after someone in another vehicle fired a gun. The defense argued that there was no evidence that Wright intended to kill anyone when he returned fire.

## II. TRIAL COURT'S FINDINGS OF FACT

### A. STANDARD OF REVIEW

On appeal, Wright argues that the trial court did not articulate findings of fact sufficient to satisfy the element of intent for second-degree murder. We disagree.

Unlike a jury, which need not explain its verdict, a trial court must "find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." *People v Xun Wang*, 505 Mich 239, 250; 952 NW2d 334 (2020). "The court must state its findings and conclusions on the record or in a written opinion made part of the record." *Id*. See also MCR 6.403. The court, however, is not required to "make specific findings of fact regarding each element of the crime." *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992). Instead, the court's findings "are sufficient as long as it appears that the trial court was aware of the issues in the case and correctly applied the law." *Id*. "A court's failure to find the facts does not require remand where it is manifest that the court was aware of the factual issue, that it resolved the issue, and that further explication would not facilitate appellate review." *Id*. at 134-135. See also *People v Johnson*, 208 Mich App 137, 141; 526 NW2d 617 (1994).

When articulating its findings in this case, the court first expressly found that Wright shot Fowler dead in front of his mother's house following an argument over Fowler communicating with or expressing interest in another man. The court further found that, within hours, he had

-3-

disclosed Fowler's death to a friend, had contacted a former girlfriend to strike up a relationship with her, and had enlisted Bristol-Davis to help him "cover up the crime." The court found credible evidence that Wright threatened Duncan in order to secure his help in disposing of Fowler's body and vehicle. The court found significant the destruction of Fowler's cell phone and the planned trip to Detroit to dispose of the body and vehicle. Indeed, the court expressly found that Wright, Bristol-Davis, and Duncan drove separately to Detroit and "then committed an abominable and revolting act of burning her body." The court noted that, despite their actions, the three men were unable to "eliminate the fact of the murder."

Having found that Wright murdered Fowler, the court turned to whether the murder was in the first degree or the second decree. In doing so, the court found that the destruction of evidence precluded it from finding Wright guilty of first-degree murder. Specifically, the court noted "that nobody will ever know what happened in the car, except that—that Ms. Fowler was murdered in the car." The court concluded that, as a result, it could only find Wright guilty of second-degree murder, not first-degree murder.

We conclude that, although the court did not expressly state that Wright acted with malice when he shot Fowler, its findings are sufficient to establish that it did, in fact, make such a finding. The court's findings reflect that it found the prosecution's theory of the case to be credible. It repeatedly found that Fowler had been murdered, not that she had been shot accidentally during a shootout with another vehicle, which was Wright's theory of the case. Considered as a whole, we conclude that the court was aware of the factual issue—i.e. whether Wright was culpable for Fowler's death—and it resolved that issue by finding that he had murdered her in the second degree. On this record, therefore, remand for further articulation of the court's findings would not facilitate appellate review.

## III. SUFFICIENCY OF THE EVIDENCE

## A. STANDARD OF REVIEW

Wright next argues that there was insufficient evidence to prove that he had the requisite intent to sustain his second-degree murder conviction. "Challenges to the sufficiency of the evidence are reviewed de novo." *People v Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted).

> The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. [*Id*. quotation marks and citations omitted).]

## B. ANALYSIS

There are three elements of second-degree murder: (1) a death, (2) caused by an act of the defendant, (3) with malice." *People v Spears*, 346 Mich App 494, 517; 13 NW3d 20 (2023). Wright argues that there is insufficient evidence that he acted with malice, which is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." See *People v Bailey,* 330 Mich App 41, 48; 944 NW2d 370 (2019) (quotation marks and citation omitted). "The prosecution is not required to prove that a defendant intended to harm or kill a specific victim. Rather, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *Id*. at 48-49 (quotation marks and citation omitted).

"Intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon." *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014), overruled in part on other grounds in *People v Reichard*, 505 Mich 81; 949 NW2d 64 (2020). "Minimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with flight and lying, which may reflect a consciousness of guilt." *Id*. Here, Fowler was shot in the head. Wright admitted to the police that he had gotten into an argument with her before the shooting, that he had his gun on his lap, and that he fired the gun "recklessly" in her direction even though she was in his line of fire. After shooting her, he did not render her any medical aid, nor seek assistance for her. Instead, he enlisted Bristol-Davis to hide her body in the trunk of her vehicle. He directed Bristol-Davis to dispose of the gun used in the shooting. He denied knowing her whereabouts to her family, suggesting that she was with another man. But he told multiple of his own acquaintances that she was dead, which was a problem for him. Wright then coerced Duncan into helping him dispose of Fowler's cell phone, body, and vehicle. He even put his blood-stained clothing into the vehicle before it was set on fire. When her body was discovered, he denied involvement. When his involvement was established by video evidence and statements from his codefendants, he offered a theory that Fowler was shot during a shootout. He admitted that he fired his gun while Fowler was in his line of fire. Considering the facts in the light most favorable to the prosecution, the evidence was sufficient to establish that Wright acted with the intent to kill.

We note that the court made no findings that Wright was actually involved in a shootout. It is reasonable to infer that the court did not find that testimony to be credible. However, to the extent that the court failed to expressly resolve this factual dispute, we conclude that the evidence nevertheless is sufficient to establish malice. That is, viewing Wright's version of events in the light most favorable to the prosecution, there is still sufficient evidence of malice. Specifically, Wright admitted that he fired his gun toward another vehicle while knowing that Fowler was in his line of fire. He did so immediately after she moved. He took no measures to ensure that she would not be hit. Instead, he fired indiscriminately in her direction. Thus, it is reasonable to infer that the gun did not go off accidentally. Rather, Wright deliberately fired it. The act of shooting toward an occupied vehicle—knowing that his own passenger was in the line of fire—demonstrates a willful and wanton disregard of the likelihood that the natural tendency of his behavior is to cause death. See *Bailey*, 330 Mich App at 48. Indeed, the fact that—in his version of events—the wrong person was shot does not negate his intent. Instead, under the doctrine of transferred intent, if the evidence shows that a defendant intended to kill one person but accidentally killed another, the defendant's intent to kill transfers from the intended victim to the

actual victim, and the defendant may be guilty of murder of the actual victim. *People v Youngblood*, 165 Mich App 381, 388; 418 NW2d 472 (1988). See also *People v Raher*, 92 Mich 165, 166; 52 NW 625 (1892) (holding that the act of shooting into a crowd with the intent to harm *anyone* is sufficient to establish intent to do great bodily harm even in cases where no victim was specifically identified).

      Affirmed.

/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin
